EDISON ELECTRIC LIGHT CO. v. ELECTRIC ENGINEERING & SUPPLY CO.

(Circuit Court of Appeals, Second Circuit.   December 1, 1897.)

PATENTS—INTERPRETATION OF CLAIMS—INFRINGEMENT—ELECTRIC LAMP SOCKETS.

   The Bergman patent, No. 311,110, for improvements in sockets for electric lamps, is limited to improvements in details of construction and arrangement of parts, and is, therefore, to be narrowly construed; and, as the fundamental idea of the patent is that all the parts except the sleeve for engaging the base of the lamp are to be located below the disk of insulating material, which is to be interposed between them and the lamp terminals, there is no infringement in a socket having all these parts located above the disk so as to involve a reorganization in detail of all the parts.   72 Fed. 274, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This was a bill in equity by the Edison Electric Light Company against the Electric Engineering & Supply Company for alleged infringement of a patent for improvements in sockets for electric lamps.   In the circuit court the bill was dismissed after final hearing (72 Fed. 274), and the complainant has appealed.

Richard N. Dyer, for appellant.

Alfred Wilkinson, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. This is an appeal from a decree dismissing the bill of the complainant in a suit to restrain infringement of letters patent No. 311,110, dated January 20, 1885, granted to Sigman Bergman, assignor, for "improvements in sockets for electric lamps." The patent relates to "sockets for use with those incandescent electric lamps whose terminals are a screw-threaded ring and a plate on the base of the lamp, the lamp being screwed into the socket, and making contact with corresponding terminals within the same." The advantages effected are stated to be as follows:

"The socket, constructed as described, is of a neat appearance, is very compact, has no useless mass of insulating material, being merely a metal skeleton with just enough insulation to support the terminals, all the circuit connections being carried by the single insulating disk, instead of being divided among two or more insulating portions as heretofore. The circuit controller, for making and breaking the circuit upon the lamp tip, employs fewer parts, and is simpler in construction, than any heretofore used. While it is very efficient in operation, the whole may be put together or taken apart with great readiness, the parts being easily separated."

It is insisted for the appellant that the circuit court erred in the conclusion that claims 1, 3, and 4 of the patent were not infringed by the incandescent electric lamp socket manufactured by the defendant. The appellee has not appeared or filed a brief in the cause, and the discussion of the patent in the opinion of Judge Coxe, who decided the cause in the court below, is devoted almost exclusively to those features which are the subjects of claims 9 and 13, and which were obviously regarded by him as the important claims of the patent. It is apparent upon the face of the patent that it is for improvements in details of construction and arrangement of parts, which, broadly considered, were old in themselves, and old in combination in electric lamp sockets. There were two forms of sockets in common use for connecting the lamp terminals with the circuit terminals. In one the socket was provided with a screw-threaded sleeve to engage a screw-threaded band on the lamp plate, and in the other was provided with a screw-threaded stud to engage with a screw-threaded sleeve in the lamp base. In each form the socket was a metallic case containing a disk of insulating material, the circuit terminals, and parts constituting the circuit controller, adapted to unite the circuit terminals electrically with the lamp terminals when the socket and lamp were screwed together. The area of invention occupied by the patent is exhibited by the following observations in the opinion of Judge Coxe:

"When it is remembered that in 1884 and 1885 all experiments along this line had to deal with a well-known lamp, and an almost equally well-known form of socket, which of necessity was required to conform to the changes made from time to time in the lamp base, it is plain that the area of action was necessarily circumscribed. For years both lamp and socket had been of a conventional type. Admitting that the material of the disk and the details of construction were new, is it not manifest that the assembling of these well-known elements in an old form of socket to receive an old form of lamp did not involve any high order of inventive skill, and that the combinations thus formed must be restricted to the mechanism shown? * * * If the broad construction contended for by the complainant were permissible, the defendant would unquestionably infringe, but with the limited construction made necessary by the prior art, and by the language of the patent, it is equally manifest that the defendant does not infringe."

Omitting various details of construction set forth in the specification, the patent describes a socket in which all the circuit controlling parts are located below the insulating disk.   The disk has a central aperture, with walls extending about the upper surface.   Mounted upon the disk, and rigidly attached to it, is a screw-threaded metal sleeve for mechanically holding the lamp, and forming one of the circuit terminals.   The insulating disk is mounted upon a metal post sufficiently above the bottom of the metallic case to give space for the circuit controlling parts.   To the under side of the disk is attached a plate, having a binding screw for one of the line wires, which plate is connected with the screw-threaded sleeve on the upper side of the disk by screws passing from the flange of the sleeve through to this plate. The other terminal socket is composed of an S-shaped spring, which is secured at one end to a metal piece depending from the under side of the insulating disk, and projects at its other end up through the aperture in the center of the disk to its upper side.   The controlling key turns in the sleeve carried by the upright metal post which supports the insulating disk.   At its inner end the key has an insulating tip, which presses against the center of the spring, and a cam on the end of the sleeve, engaging with a pin on the key, gives the key an inward movement as it is turned by the hand. This cam has a notch at its end, which holds the key at the limit of its inward movement; but when the key is turned backward, and released from the notch, the spring snaps back with a quick motion. The spring thus forming the bottom terminal of the circuit is the movable element of the circuit controller. Its range of movement is controlled by the aperture in the disk through which it operates to break and make contact with the plate terminal of the lamp.   A binding screw attached to the metal piece which holds the spring serves for the connection of the line wire with it.

The three claims now in controversy are as follows:

"(1) In a socket for an electric lamp, the combination of two circuit terminals, —one a sleeve adapted to make contact with the band or ring terminal, the other a spring movable into and out of contact with the bottom terminal of the lamp, -substantially as set forth."

"(3) In a socket for an electric lamp, the combination, with a disk of insulating material, of a contact sleeve for making contact with the band or ring terminal of the lamp, a contact piece for making contact with the bottom terminal of the lamp, and two terminals for the circuit wires leading to the socket, all said socket contacts and terminals being carried by the said insulating disk, substantially as set forth.

"(4) In a socket for an electric lamp, having two terminals for making connection with corresponding lamp terminals, the combination of a metal supporting portion and a disk of insulating material carried thereby and carrying all the terminals and contacts of the socket, substantially as set forth."

The question of infringement upon the present appeal is confined to sockets similar to the exhibit, "Thomson-Houston Key Socket." An element of both the first and the third claims is the sleeve adapted to make contact with the band or ring terminal of the lamp.   We have no hesitation in concluding that the screw-threaded stud engaging the screw-threaded sleeve in the defendant's socket is practically the same thing as the screw-threaded sleeve engaging

the screw-threaded lamp base of the patent. As regards this feature of difference, it seems obvious that the one socket is merely a reversal of the other, and that there is only a colorable variation in the operative parts of the structures.

The first claim is for a combination of the contact sleeve with the movable spring. In view of the prior state of the art, and of the description in the specification, the claim cannot be read broadly to cover any kind of a spring movable into and out of contact with the bottom terminal of the lamp. The prior art shows various arrangements of springs for bringing socket and lamp contacts into electrical connection, and it was old to employ a movable spring as a switch connection between circuits. The specification describes the spring as follows:

"The two bent springs, m, m$^1$, are attached by rivets to the piece E. [E being a metal piece secured by screws to the under side of the insulating disk.] One of these, m, passes through the central aperture in the disk, A, and has its end, m$^2$, bent horizontally, passing through a slot or opening, n, in the lower portion of sleeve, B, and resting, when the circuit is open, upon the upper side of disk, A. Spring m$^1$ is a re-enforcing spring, to assist the action of the spring m. Through the sleeve, f, passes the circuit controlling key, which is a metal rod, o, having a thumb piece, F, outside the socket, and an insulating tip, p, which presses against the spring m. The insulating tip removes the key from the circuit. The key has a pin, r, which passes through the oblique slot, s, in sleeve, f, so that when the key is turned it presses against spring m, and throws its bent end, m$^2$, up against the plate terminal, m$^3$, of the lamp, which, when the lamp is screwed in, rests upon the central elevation, b, b [raised walls surrounding the aperture of the disk on the upper side], which prevents the terminal from touching the flange, c. The connection formed when the circuit is closed is a reliable spring contact, and one which allows the lamp to be turned in the socket without breaking connections. To close circuit, the key is turned until pin, r, rests in notch, t, and to open circuit the key is turned back from said notch, when m, m$^1$, spring back, bringing m$^2$ down upon the disk, A, again."

In the defendant's socket there is no re-enforcing spring. The spring is not conformed to do its work in the disk aperture, or pass through any aperture in the disk. It has no end passing through a slot or opening in the lower portion of the sleeve. It does not rest, and is not brought down when the circuit is open, upon the upper side of the disk. Its range of movement is not controlled by anything which is the equivalent of a disk aperture.

One of the elements of claim 3 is the movable spring of claim 1, but termed "a contact piece for making contact with the bottom terminal of the lamp." The defendant's socket does not have this device of the patent for the same reason that it does not have the movable spring of claim 1.

An element of the fourth claim is "the combination of a metal supporting portion and a disk of insulating material carried thereby, and carrying all the terminals and contacts of the socket." The "metal supporting portion" is described in the specification as follows:

"The disk, A, is supported from below by means of the flat metal ring, C, from which a part, D, extends up, having horizontal projections, e, e, to which disk, A, is screwed. The sleeve, f, for the circuit controlling key, extends inwardly from the part D. The ring or plate, C, upwardly extending part, D, and sleeve, f, are preferably all made in one piece."

The defendant's socket does not have this metal supporting portion.

It is apparent from the description that the basic idea of the patent, as regards the arrangement of the parts, is that all of them, except the sleeve for engaging the base of the lamp, are to be located below the disk, and the disk is to be interposed between them and the lamp terminals. It is this arrangement which necessitated the metal supporting parts of the disk, the aperture in the disk, and the construction and arrangement of the spring so that it would do its work in the aperture. All the details of construction necessary to the co-operation of the parts, as they are described, are adapted with a view to this arrangement. In the defendant's socket all these parts are located above the disk. The new location involved a reorganization in detail of all the parts, and permitted a simpler arrangement and construction generally. The disk itself was simplified by dispensing with the wall aperture. The metal supporting portion was dispensed with. The spring was not required to conform to the necessity of doing its work through the disk aperture. Doubtless, the socket of the patent was an advance upon the preceding structures, because of its compactness and comparative simplicity of construction. So, also, was the defendant's socket. Both were improvements only in matters of detail. We conclude that none of the claims are infringed, and that the decree should be affirmed.